# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-3201/3239

_____

Reginald Clemons,          *
         *
         Appellee/Cross-Appellant,  *   Appeal from the United States
         *   District Court for the Eastern
         v.          *   District of Missouri.
         *
Allen Luebbers, Superintendent,  *
Potosi Correctional Center,      *
         *
         Appellant/Cross-Appellee.  *

_____

Submitted: December 15, 2003
Filed: September 9, 2004
**Amended: December 14, 2004**

_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

This is an appeal stemming from an unfortunate series of events culminating in the sexual assault and murder of two women in St. Louis, Missouri. The district court granted Reginald Clemons habeas corpus relief based on a perceived denial of his Sixth Amendment right to a fair jury under Witherspoon v. Illinois, 391 U.S. 510, 518, 522 (1968) (holding that a death sentence was unconstitutional under the Sixth and Fourteenth Amendments when a veniremember was excluded for cause after simply voicing general conscientious or religious objections to the death penalty). Clemons v. Luebbers, 212 F. Supp. 2d 1105 (E.D. Mo. 2002) (Clemons II). We reverse because we find that Clemons has procedurally defaulted this claim.

## I. BACKGROUND

On the night of April 4, 1991, Clemons, Antonio Richardson, Marlin Gray, and Daniel Winfrey went to the Chain of Rocks Bridge, an abandoned structure spanning the Mississippi River between Missouri and Illinois, to smoke marijuana. They parked on the Missouri side and walked across to the Illinois side to do the drugs. The marijuana would not light, however, and as they walked back across the bridge they met Julie Kerry, her sister Robin Kerry, and their cousin, Thomas Cummins, walking toward the Illinois side. The groups spoke briefly and then continued on their respective courses toward opposite ends of the bridge.

Upon reaching the Missouri side, Clemons suggested that the group rob the three, and the group then walked back toward the Illinois side, intercepting the Kerry sisters and Cummins at a bend in the middle of the bridge. Clemons, Richardson, and Gray took turns raping the Kerrys while Winfrey held down Cummins. Either Richardson or Clemons then pushed the sisters off of the bridge and ordered Cummins to jump from a pier directly below the bridge into the river seventy feet below.

Cummins survived the plunge into the river, and he eventually testified against the four assailants. Julie's body was found downstream three weeks later. Robin's body has never been found. Winfrey pled guilty to two counts of second-degree murder and agreed to testify against the remaining three in exchange for a recommended thirty-year sentence. Clemons, Richardson, and Gray were convicted of first-degree murder and sentenced to death. See Richardson v. Bowersox, 188 F.3d 973 (8th Cir. 1999) (affirming denial of habeas corpus relief); Gray v. Bowersox, 281 F.3d 749 (8th Cir. 2002) (same), cert. denied, 537 U.S. 1115 (2003).

After Clemons was convicted and sentenced, he filed a Rule 29.15 motion to vacate, set aside or correct the judgment or sentence of the trial court. Clemons challenged, as relevant, the jury selection proceedings, and made claims of prosecutorial misconduct. Importantly, in the motion, Clemons did not directly raise

his current voir dire objections–the improper exclusion of death-qualified veniremembers–as independent substantive claims, but raised them only in conjunction with his ineffective assistance of counsel assertions. The reason for this approach was his trial counsel's failure to adequately preserve these claims at trial and in the motion for new trial. On March 18, 1996, the Rule 29.15 motion was denied. The Missouri Supreme Court affirmed the conviction, sentence, and denial of post-conviction relief. State v. Clemons, 946 S.W.2d 206 (Mo. 1997), cert. denied, 522 U.S. 968 (1997) (Clemons I).

In his current petition for habeas corpus, Clemons brought claims for ineffective assistance of trial counsel, prosecutorial misconduct, errors connected with the denial of the motion to suppress, and errors relating to jury selection and empaneling. Of the numerous claims for relief alleged in the voluminous pleading, the only ones before us pursuant to the state's appeal and under the certificate of appealability are Clemons's allegations relating to the prosecutor's closing argument (Claims 6A-E, 8 and 11 of the habeas corpus petition), and two voir dire claims–the exclusion of six veniremembers as not death-qualified (Claim 4B), and the exclusion of prospective juror Doss as not death-qualified (Claim 4A).

In Claim 4B, each of the six prospective jurors initially indicated that they could vote for the death penalty in a proper case. Upon further questioning, however, all indicated that if the evidence showed that Clemons did not actually push the women off the bridge, they would not vote for a death sentence. In effect, these prospective jurors indicated that they could not impose the death penalty under an accomplice-liability theory. Clemons claims the prosecutor incorrectly recited Missouri law by not including the element of cool deliberation or reflection in the hypothetical questions presented, and by injecting an improper robbery hypothetical into the interrogatories. This improper questioning, he argues, led to the erroneous exclusion of these six prospective jurors for cause in violation of Witherspoon.

The district court reached the merits of this claim, despite the state's procedural bar defense. The district court stated that, "I have carefully reviewed the record, and agree with Clemons that [Claims 4A & B] were properly preserved at trial, in the motion for judgment of acquittal, and on the consolidated appeal. The Missouri Supreme Court's finding otherwise is in error." Clemons II, 212 F. Supp. 2d at 1119.

Reviewing Claim 4B on its merits, the district court found that in excluding these six prospective jurors, the trial court misapplied Witherspoon and Wainwright v. Witt, 469 U.S. 412, 424 (1985) (clarifying Witherspoon and holding that a veniremember can be stricken when his or her views on the death penalty would "prevent or substantially impair the performance of his duties as a juror") (internal quotations omitted). The district court found that the prosecutor had not accurately described accomplice-liability law and that, as a result, the trial court adjudication of these voir dire claims was an unreasonable application of Supreme Court precedent. Clemons II, 212 F. Supp. 2d at 1122.

Claim 4A involved prospective juror Doss. The district court found that Doss was correctly dismissed for cause and denied relief on this claim. Initially Doss stated that he could never vote for the death penalty under any circumstances. But upon further questioning from the prosecutor, Doss equivocated. The trial judge, however, struck Doss for cause, stating that he had unequivocally indicated his inability to impose the death penalty. The district court found that the Missouri Supreme Court,[1]

> correctly identified the controlling federal law and I cannot say that it
> unreasonably applied the law or made an unreasonable determination of

---

[1]The district court identified the Missouri Supreme Court's adjudication of this issue as the decision that it reviewed under 28 U.S.C. § 2254. However, the Missouri Supreme Court only reviewed the Doss issue as it related to counsel's ineffectiveness– the claim raised in the Rule 29.15 motion. The Missouri Supreme Court did not review this substantive claim on its merits.

the facts. Doss's first answer was unequivocally that he could *not* apply the death penalty for religious reasons. His later equivocation is not sufficient to overcome the initial unequivocal statement, even though the trial judge may have misremembered the exact details of it.

Id. at 1121.

Finally, the district court found that most (Claims 6B-E and Claim 8) of Clemons's claims for prosecutorial misconduct were procedurally barred because they were not adjudicated by the state courts. Id. at 1123. The district court reached the merits of two of the claims because the Missouri courts had done so. These two claims were that the prosecutor threatened and intimidated a possible exculpatory witness (Michael Chapey) into not testifying (Claim 6A), and that the prosecution made improper comments during penalty-phase closing arguments (Claim 11). The district court denied these claims. Id. at 1125-27.

The state appeals the district court's adverse ruling on Claim 4B (the six purportedly death-qualified veniremembers), and the district court granted Clemons a certificate of appealability on Claim 4A (Doss) and Claims 6A-E, Claim 8, and Claim 11 (prosecutorial misconduct).

## II.    DISCUSSION

We review the district court's legal conclusions de novo, and its factual findings for clear error. Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Pursuant to the AEDPA's amendment's to 28 U.S.C. § 2254, a state prisoner may obtain federal habeas relief with respect to a claim that has been adjudicated on the merits in state court only when the state decision was either contrary to or involved an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d).

The first step in evaluating a challenge to the state court's adjudication is to determine what, if anything, the Supreme Court has said on the subject. Kinder, 272 F.3d at 537-38. Next, we look carefully at the state court's decision under the AEDPA standards and will find the result "contrary to" clearly established federal law only if the court has applied a rule that directly contradicts Supreme Court precedent or has reached a result opposite to a result reached by the Supreme Court on "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405 (2000) (concurring opinion of O'Connor, J., for the Court). And, an "unreasonable application" of the law is not the same as "incorrect." Penry v. Johnson, 532 U.S. 782, 793 (2001). In other words, the state court's application might be erroneous in our independent judgment without being "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (internal quotations omitted).

### A. Voir Dire Claims

#### 1. Claim 4B

As noted earlier, in Claim 4B, Clemons alleges that six prospective jurors were improperly excluded as not death-qualified. At the outset, we must address the state's procedural default argument. The state alleges that because defense counsel made inadequate objections at trial and did not include these claims in the motion for new trial, the state appellate courts did not review the voir dire issues. Thus, the state says, these jury selection issues are procedurally defaulted.

A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds. Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002). A state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court, unless the prisoner can show cause and prejudice for the default, or actual innocence. Coleman v. Thompson, 501 U.S. 722,

750 (1991). In other words, a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards. Murray v. Carrier, 477 U.S. 478, 493-96 (1986).

For the federal court to enforce a state procedural bar, either the state court must have declined to reach the issue for procedural reasons or it is clear that the state court would hold the claim procedurally barred. The default must have been actually imposed; it is not enough that the state court *could* or *should have* imposed a default. Caldwell v. Mississippi, 472 U.S. 320, 327 (1985). The federal court looks to the last, reasoned state court opinion dealing with the claim to determine whether a specific contention is procedurally defaulted. "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). And, federal courts should not consider whether the state court *properly* applied its default rule to the claim; federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules, Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), except in unusual circumstances not present here, see Lee v. Kemna, 534 U.S. 362, 376 (2002).

In its ruling on Clemons's direct appeal and Rule 29.15 motion, the Missouri Supreme Court stated:

> Appellant raises numerous claims of trial court error on direct appeal that were not properly preserved because they were either not objected to at trial or not raised in the motion for new trial. These claims are reviewable, if at all, only for plain error. The "plain error" rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. Appellant must demonstrate that manifest injustice or a miscarriage of justice will occur if the error is not corrected. . . . None of appellant's unpreserved claims raise a substantial ground for finding plain error. Therefore, we decline to subject these claims to our discretionary review under Rule

30.20. However, to the extent appellant properly raises the issue under Rule 29.15, we will review appellant's additional claims for ineffective assistance of counsel, either for failing to preserve the alleged trial error or for ineffective assistance regarding the circumstances of the trial error itself.

Clemons I, 946 S.W.2d at 224 (citations omitted). The Missouri Supreme Court then analyzed as a "particular" constitutional claim whether Clemons's two trial attorneys were ineffective for failing to object to the purportedly improper voir dire questions asked of the veniremembers, thereby causing erroneous dismissals for cause. Id.

We agree with the state's contention that the Missouri Supreme Court applied a procedural bar to Clemons's substantive voir dire claim. Notwithstanding this unequivocal ruling, the district court found that this claim was properly preserved at trial, and that the Missouri courts *improperly* applied a procedural bar. The district court erred in this regard. As previously stated, federal courts do not look at whether state courts have correctly applied their own procedural rules. They simply determine whether those procedural rules were applied to bar the claim. Sweet, 125 F.3d at 1151. If they were, the petitioner is left to show cause and prejudice or actual innocence. Because counsel did not correctly[2] protect this voir dire issue for appellate review, the state supreme court declined to review the matter on appeal.

The Missouri court did, however, fully and independently review the ineffective assistance of counsel assertions arising from this unpreserved voir dire claim, but not its substantive merit, standing alone. Clemons argues that he "fairly presented" this claim to the state court, and should not be penalized for poor draftsmanship or inartful arguments. In this regard, however, Clemons makes an exhaustion argument, not a procedural bar argument, and the two concepts are quite

---

[2]The trial transcript indicates that counsel did generally object each time that one of the prospective jurors was dismissed for cause. However, counsel did not include these specific claims in the motion for new trial.

separate. <u>Justus v. Murray</u>, 897 F.2d 709, 713 (4th Cir. 1990). Exhaustion requires fair presentment of a claim to the state courts for initial adjudication, while procedural default requires the federal courts to abstain from considering an issue if that issue was decided on independent and adequate state grounds. <u>Id.</u>

Although Clemons did attempt to fairly present these claims to the state courts for purposes of exhaustion,[3] the failure of counsel to later preserve these claims prompted the state courts to dispose of the voir dire arguments on procedural grounds, an independent and adequate state basis. Absent any reason to lift the procedural bar (cause and prejudice or actual innocence), our review is precluded.

In his traverse to the district court, Clemons argued that an ineffective lawyer caused his procedural default, and that he was prejudiced by this mistake. In order for deficient trial work to constitute the kind of "cause" that would excuse a procedural bar, counsel must have been constitutionally ineffective under <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984) (holding that to constitute ineffective assistance of counsel under the Sixth Amendment, counsel's performance must have fallen below an objective standard of reasonableness that prejudiced the defendant). And, petitioner must have independently presented this ineffective assistance claim to the state court for adjudication. <u>Carrier</u>, 477 U.S. at 489.

---

[3]Clemons did not present the voir dire claim with regard to one of the six jurors (Wetteroth) to the state courts. The Missouri Supreme Court opinion mentions five of the six that Clemons currently challenges in his habeas corpus petition, but not Wetteroth. Nor did Clemons include the Wetteroth claim in his briefing to the state supreme court. <u>See</u> App. Vol. II, at 626. However, in its response to the habeas corpus petition, the state expressly waived exhaustion, as required by 28 U.S.C. § 2254(b)(3). We therefore consider the claim as though it has been exhausted, but also procedurally defaulted. <u>See</u> <u>Nave v. Delo</u>, 62 F.3d 1024, 1030 (8th Cir. 1995).

Clemons did present this ineffective assistance claim to the state courts.[4] Thus, if counsel was constitutionally deficient under Strickland standards, the cause factor necessary to lift the procedural bar is established.

But, even if counsel's performance with regard to Claim 4B fell below a standard of objective reasonableness as a result of an inadequate trial objection or an incomplete motion for new trial, we find, as did the Missouri Supreme Court, that under the second part of the Strickland test, Clemons was not prejudiced.[5] That is

[4]The Missouri Supreme Court found no merit in Clemons's ineffective assistance claim. 946 S.W.2d at 225. The district court also rejected this habeas corpus claim and the issue was not included in the certificate of appealability. This precludes our further consideration of the merits of this decision. Nonetheless, the question remains, through what lens should we view the ineffective assistance claim? Should we perform a straightforward Strickland analysis (de novo), or give 28 U.S.C. § 2254(d) deference to the state court's adjudication of the claim? Because the ineffective assistance claim is not part of our certificate, it seemingly is not a "claim" as defined by the plain language of Section 2254(d). On the other hand, Carrier requires that ineffective assistance must first be raised as an independent constitutional claim to the state courts before it can be advanced as cause for procedural default. Presumably the Supreme Court would not require a state court to initially review the claim if no deference to that adjudication is warranted. However, the Supreme Court has *not* expressly mandated that we give Section 2254(d) deference to the state court's adjudication of the ineffective assistance claim. See Lee v. Davis, 328 F.3d 896, 901 (7th Cir. 2003) (declining to decide what level of deference to give a previously adjudicated ineffective assistance claim, because the result would be the same under either analysis). Like our sister circuit, we decline to take up this unresolved issue because the outcome of the ineffective assistance claim would be the same under either analysis.

[5]When ineffective assistance of trial counsel is asserted as the basis of cause in the cause/prejudice procedural bar analysis, the presence of a "prejudice" factor in both the Strickland paradigm and the test outlined in Murray v. Carrier, sometimes makes this multi-step evaluation a bit confusing. The standards for Strickland prejudice and for Carrier prejudice are either the same, or procedural bar prejudice is somewhat higher. Compare Mercer v. Armontrout, 864 F.2d 1429, 1434 (8th

because the outcome of the state court proceeding would not have been different absent counsel's purported failures.  Strickland, 466 U.S. at 691-92.  The trial court did not err in excluding these potential jurors and thus, their absence had no effect on the jury's imposition of the death penalty.

A trial court's finding of death qualification in the voir dire process is a factual determination entitled to the presumption of correctness established in 28 U.S.C. § 2254(e).  See Witt, 469 U.S. at 429 (holding that voir dire findings were "factual issues" entitled to the presumption of correctness formerly found in Section 2254(d)).  Under this standard of review, Clemons has not shown that the trial court's finding was wrong under Witherspoon and Witt.  The trial court concluded that, based on their answers to the prosecutor's questions, these prospective jurors' beliefs would prevent or substantially impair their performance as jurors.  Each veniremember unequivocally stated that he or she could not impose the death penalty under the circumstances posed by the prosecutor.

Defense counsel asked each one if he or she could impose the death penalty, and each indicated "yes."  However, the prosecutor had asked these prospective jurors the same question.  It was only when the prosecutor clarified that the jury might be asked to impose the death penalty for accomplice liability that the prospective jurors balked.  Defense counsel only delved into accomplice liability with three of the six jurors, and two of them reiterated their earlier statement that they could not impose death for accomplice liability.  One of them arguably agreed to impose death after

---

Cir.1988) (noting prejudice needed to overcome procedural default is "not dissimilar to *Strickland*'s prejudice test for ineffective assistance of counsel") with Zinzer v. Iowa, 60 F.3d 1296, 1299 n.7 (8th Cir. 1995) (opining in dicta that "actual prejudice" required to surmount procedural bar is a higher standard than Strickland prejudice).  Because we dispose of this claim on the cause prong of the cause and prejudice exception to the procedural bar doctrine (which here involved ineffective assistance), we have no occasion to address the Carrier prejudice prong or how it differs, if at all, from Strickland.

much prodding by defense counsel. However, our review of the trial transcript indicates that the trial court reasonably could have construed the purported rehabilitation of this juror (Wetteroth) as inadequate. Faced with these prospective jurors' answers to the death qualification questions, the trial court's dismissal of these six veniremembers for cause withstands review under Section 2254(e).

Clemons makes much of the fact that the prosecutor's voir dire inquiry allegedly misstated the circumstances under which a Missouri jury could sentence a defendant to death. Specifically, Clemons charges the prosecutor with failing to include the "cool reflection" standard in his questioning and with injecting a robbery scenario into the hypothetical posed to some of the veniremembers. We find neither argument persuasive. We are not persuaded that the prosecutor misstated the law on "cool reflection." The record indicates that before questioning the veniremembers individually, all six prospective jurors involved in Claim 4B heard, as a group, that the requisite mental state for first-degree murder was "cool reflection." The prosecutor was not required to repeat each element of first-degree murder while individually questioning each prospective juror. Otherwise, we fail to see the point of addressing the venire as a group.

Clemons and the district court have both pointed to the prosecutor's robbery hypothetical as especially prejudicial. The prosecutor used this hypothetical to explain accomplice liability, while individually questioning prospective jurors other than the six in question here. Each of the six heard the hypothetical, but none of the prospective jurors were specifically and individually questioned with the robbery hypothetical. Instead, each was asked whether he or she could impose the death penalty if Clemons did not actually push the women off the bridge. We are satisfied that these prospective jurors knew that they were being asked if they could impose the death penalty under an accomplice to murder theory, not a robbery.

This is not to say that a misleading prosecutor could always exclude prospective jurors under <u>Witherspoon</u> and <u>Witt</u> without violating the defendant's

-12-

constitutional rights. For example, if the prosecutor asks veniremembers, "if I only prove that the killing was accidental, could you still impose the death penalty," and prospective jurors were excluded for cause when they answered "no." Under such circumstances, the defendant's due process and Sixth Amendment rights would likely be violated. This is not that case.

Clemons has no claim that his procedural default should be excused. He cannot show cause. His counsel's performance, while possibly deficient, cannot be said to have affected the outcome of the proceeding. So, the prejudice portion of the ineffective assistance test has not been met. Strickland, 466 U.S. at 691-92. The trial court's exclusion of these prospective jurors withstands scrutiny under Section 2254(e), and these voir dire claims are procedurally barred unless Clemons can establish actual innocence.

Clemons makes no argument in briefing to this court about actual innocence. In the district court, Clemons argued[6] that he was actually innocent because there was no evidence from which a reasonable jury could find that he deliberated or planned to murder the Kerry sisters. The district court found that such evidence did exist and rejected Clemons's claim of actual innocence. 212 F. Supp. 2d at 1114-15. We agree with the district court that Clemons failed to make the requisite showing of actual innocence.[7]

_____

[6]The district court points out that Clemons's actual innocence claim is actually Claim 1 of the habeas corpus petition, and in substance, is more of a claim that his due process rights were violated due to insufficiency of the evidence. 212 F. Supp. 2d at 1114. Nonetheless, we treat the claim as Clemons's assertion that actual innocence excuses his procedural default.

[7]There are several troubling aspects to this case. Apparently Cummins, one of the alleged victims, initially made a confession to police that *he* had murdered his two cousins by pushing them off of the bridge. After the four eventual suspects were caught, Cummins retracted and said that he had been mistreated by police and coerced into giving the confession. In his petition for habeas corpus, Clemons makes similar

-13-

## 2.    Claim 4A

Although it appears to us that the same procedural default analysis would apply to Juror Doss as to the Claim 4B jurors discussed above, in its briefing and at oral argument, the state has waived its procedural bar defense with regard to this claim. So we must review it on its merits. However, because the Missouri Supreme Court peripherally addressed the merits of this claim, but only as a subsidiary point in its analysis of whether Clemons was prejudiced by alleged ineffective assistance of counsel, it is unclear whether we have a state court adjudication that is entitled to Section 2254(d) deference. See ante, note 1. Assuming *arguendo* that the Doss claim was not "adjudicated on the merits" within the meaning of Section 2254(d), "we likely should apply the pre-AEDPA standard of review." Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002). Prior to AEDPA, we reviewed Sixth Amendment death qualification issues under the standards set forth in Witherspoon and Witt. Even then, however, a trial court's voir dire factual findings were entitled to a presumption of correctness, Witt, 469 U.S. at 429, which is essentially equivalent to the factual presumption of correctness currently found in Section 2254(e)(1). With this standard in mind, we analyze the trial court's voir dire findings with regard to Juror Doss.

Doss initially stated, unequivocally, that he could not apply the death penalty for religious reasons. Upon further questioning by the prosecutor, he equivocated and

---

allegations of police brutality and coercion. And the prosecutor, Nels Moss, was held in contempt by the trial court for making improper arguments to the jury. The district court correctly described Moss as "abusive and boorish, and that his tactics overall were calculated to intimidate the defense at every turn." Clemons II, 212 F. Supp. 2d at 1123. However, in his actual innocence claim and elsewhere, Clemons does *not* argue that he was not with the group of four that encountered the Kerrys and Cummins on the bridge, nor does he point to Cummins as the real culprit; instead, he alleges that he was not at the place on the bridge where the Kerrys were actually pushed. His best evidence of this, though, is the hearsay testimony of Marlin Gray's prison cellmate. The district court's conclusion that Clemons's evidence of actual innocence is not credible is not clearly erroneous.

said there might be a factual scenario under which he could impose the death penalty. But when presented with the accomplice-liability theory, Doss stated that he could not impose the death penalty. Shortly after this statement, Doss reversed course and stated that he could impose death even if Clemons did not push the women off of the bridge. When questioned by defense counsel, Doss stated that he could impose the death penalty under the "acting with another" theory.

When Doss was dismissed for cause, the trial court stated:

> And Mr. Doss initially said no death penalty, religious reasons, then backtracked a little. He initially said all doubt, and I don't think he has been rehabilitated by just asking, "Well, would you follow the instructions? Would you do what the Judge tells you?" I think these people need to be given an alternative to rehabilitate them. . . . He said no death penalty on acting with another.

App. Vol. II, at 397.

The trial court did mischaracterize Doss's statements regarding the death sentence for "acting with another." Doss originally said that he could not impose the death penalty in those circumstances, though he later retreated from that position. But, we find that the trial judge was left with the firm conviction that Doss's religious beliefs would ultimately substantially impair his ability to act as a juror. This credibility determination is entitled to great deference at any level of review, but especially in a federal habeas proceeding. The <u>Witt</u> Court noted that a juror's bias need not be proved with "unmistakable clarity," 469 U.S. at 424, and it follows that the trial judge's findings attain the utmost importance. As the <u>Witt</u> Court stated:

> Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. . . . [T]his is why deference must be paid to the trial judge who sees and hears the juror.

<u>Id.</u> at 425-26.

Under <u>Witt</u>, and its mandate that we apply a presumption of correctness to the trial judge's impressions of prospective juror Doss, we cannot say that Clemons has overcome that presumption. Although the trial court did not remember that Doss changed his mind about imposing the death penalty for accomplice liability, he correctly remembered that Doss held strong beliefs against the death penalty and was therefore unconvinced that Doss had been rehabilitated. Indeed the Missouri Supreme Court observed that, "Doss's equivocal and shifting responses to questions focusing on his ability to impose the death penalty provide a sufficient rationale for the trial court's decision to sustain the state's motion." <u>Clemons I</u>, 946 S.W.2d at 225. The printed record may show a lack of clarity on this issue, but as the <u>Witt</u> Court anticipated, the trial court's firsthand impressions trump the cold record. Accordingly, Clemons cannot prevail here.

## B. Prosecutorial Misconduct Claims

First, we address the procedurally defaulted claims. The district court found that Claim 8 and Claims 6B–6E were not decided on the merits by the Missouri state courts. Clemons's claims are that the prosecution made improper statements during guilt-phase closing arguments (Claim 8); that the state tampered with evidence (Claim 6B); a <u>Brady v. Maryland</u> violation (Claim 6C); that the prosecutor improperly introduced out-of-court statements in violation of the Confrontation Clause (Claim 6D); and that the state knowingly presented perjured testimony (Claim 6E). Despite the fact that the district court issued a certificate of appealability for these claims, Clemons did not brief the issues on appeal. We decline to take up these matters for him and deem them abandoned. <u>United States v. Walrath</u>, 324 F.3d 966, 970 n.2 (8th Cir. 2003). And even if these arguments had not been abandoned, we agree with the district court's procedural default analysis for these prosecutorial misconduct allegations. <u>See</u> 8th Cir. R. 47B.

### 1.    Intimidated Witness Claim

Clemons claims that the prosecutor intimidated witness Michael Chapey into not testifying at trial.[8]  Clemons planned to introduce Chapey's evidence to impeach Winfrey, the state's witness, and one of the men on the bridge that night.  Chapey and Winfrey were incarcerated together at some point in time after these crimes occurred.  Chapey claimed that after he appeared on Clemons's trial witness list, the prosecutor visited his cell and threatened retaliation in future (theoretical) criminal prosecutions.  The district court granted an evidentiary hearing on this claim.  The hearing revealed that, instead, Chapey called the prosecutor to his jail cell and asked if he could help with his parole adjudication.  The prosecutor responded that he was not in the business of helping out defense witnesses.  The district court determined that Chapey's testimony was not credible, stating:

> I find from the evidence presented to me that Chapey is a very uncredible [sic] witness.  Chapey impressed me as someone who only does what will help Chapey.  I certainly do not believe him about what he claims Daniel Winfrey told him, and I find it unlikely that a jury

---

[8]It is questionable whether this claim was actually presented to the state courts by Clemons, and if it was, whether there is a state court adjudication of the issue. The Rule 29.15 post-conviction court mentions Michael Chapey once in its factual recitations but does not mention Chapey in its legal conclusions. The first amended 29.15 motion does not mention prosecutor misconduct based on Chapey's failure to testify at trial. The Missouri Supreme Court nowhere mentions Chapey in its opinion. However, in its reply brief, the state does not assert that this claim is procedurally defaulted. Rather than further parsing the voluminous record to find evidence of the state court adjudication of this issue, we will treat it as though it was presented to the state court for adjudication, but ignored. Under these circumstances, the issue was not decided on independent and adequate state grounds. Thus, we apply a pre-AEDPA standard of review. Taylor v. Bowersox, 329 F.3d 963, 967-68 (8th Cir. 2003) (holding that when there is no state court adjudication of a claim, we need not apply the AEDPA's deferential standard of review but review the district court's factual determinations for clear error and its legal conclusions de novo), cert. denied, 124 S. Ct. 1681 (2004).

would have believed him either. He has admitted that he was willing to change his testimony in whatever way would benefit him, and had he been called as a witness, there is no telling what he would have actually said.

Clemons II, 212 F. Supp. 2d at 1125.

This factual finding by the district court was not clearly erroneous. Furthermore, we agree with the district court's legal conclusion that the outcome of Clemons's trial would not have been different if Chapey had testified. See Peeler v. Wyrick, 734 F.2d 378, 381-82 (8th Cir. 1984) (holding that harmless error rule applies for habeas corpus witness intimidation claim).

## 2.    Improper Penalty-Phase Closing Argument

The final claim we consider is that the prosecutor made an improper penalty-phase closing argument. Clemons contends that the prosecutor's reference to Charles Manson and John Wayne Gacy during the penalty phase violated his rights under the Due Process Clause.

The question here is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Relief is available only if "the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). Because this claim was adjudicated on the merits by the state courts, we apply 28 U.S.C. § 2254(d), and can grant relief only if the state court unreasonably applied Supreme Court precedent in disposing of this claim. Williams, 529 U.S. at 405 (concurring opinion of O'Connor, J., for the Court).

-18-

The Missouri Supreme Court noted that the trial court sustained the defense's immediate objection to those statements, admonished the prosecutor to refrain from this argument, ordered the jury to disregard the comments, and had them stricken from the record. The court held that the trial's fairness was the key component in a prosecutorial misconduct case, and that a reversal is reserved for extraordinary circumstances–where the failure of the trial court to grant a mistrial resulted in the denial of a fair trial. The court then rejected this claim. Clemons I, 946 S.W.2d at 217. We find that the Missouri Supreme Court's adjudication of this claim was not an unreasonable application of Supreme Court precedent. See Darden, 477 U.S. at 181.

## III. CONCLUSION

For the reasons stated herein, we reverse the district court's grant of habeas corpus on Claim 4B of the habeas corpus petition, and affirm the district court's denial of relief with regard to the remaining claims. This matter is remanded to the district court for further proceedings not inconsistent with this opinion.

MELLOY, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion on voir dire claim 4B, concerning the exclusion of six prospective jurors, and both of Clemons' prosecutorial misconduct claims. However, I respectfully dissent from the majority opinion as to claim 4A, concerning the exclusion of venireperson Doss. I believe clear and convincing evidence overcomes the presumption of correctness we afford to the state court's ruling. I would reverse and remand on that claim.

In my view, claim 4A was not adjudicated on the merits by the Missouri Supreme Court. See State v. Clemons, 946 S.W.2d 206, 224 (Mo. 1997). Thus, the factual findings underlying the decision are entitled to a presumption of correctness that may be overcome by clear and convincing evidence.

During voir dire, Doss originally said he would not vote for the death penalty for religious reasons. The prosecutor then asked whether the belief was so strong that he could not put it aside for this case. Doss answered that it was not. The prosecutor then rephrased and asked if his beliefs were so strong that he would not be able to recommend the death penalty. Doss answered they were not. The prosecutor then asked what standard of proof Doss would need to vote for the death penalty. He answered that he would need to be firmly convinced. The prosecutor followed up by asking whether he could vote for death if he found aggravating circumstances and was firmly convinced. Doss responded that he could.

Next, the prosecutor asked Doss about accomplice liability. Doss first said that he could not recommend death if Clemons did not himself push the girls off the bridge. The prosecutor then asked whether there was anything the government could show that would change Doss's mind. Doss responded that his mind could be changed. The prosecutor then asked again whether there was something the government might be able to show that would convince Doss to vote for death, even if Clemons was an accomplice only. Doss confirmed that he could vote for death.

Defense counsel also questioned Doss. Doss reiterated multiple times that he could recommend the death penalty. He also reiterated that to recommend death, he would need to be firmly convinced beyond a reasonable doubt.

When the state moved to strike Doss for cause, the Court stated:

Mr. Doss initially said no death penalty, religious reasons, then backtracked a little. He initially said no doubt, and I don't think he has been rehabilitated by just asking, "Well, would you follow the instructions? Would you do what the Judge tells you?" I think these people need to be given an alternative to rehabilitate them. You know, much to the extent that he did with Ms. Farrario, but we'll get to her. He said no death penalty on acting with another.

-20-

(App. at 397.) The majority opinion acknowledges that the trial court mischaracterized Doss's statements regarding accomplice liability, but ultimately concludes that the state court judge was left with a firm conviction that Doss's religious beliefs would preclude him from following the law. However, the majority ignores what comes next in the exchange between the court and counsel:

> Counsel: Judge, when we started yesterday, he said, no. Then I rehabilitated him. And he said, "I could give it" today. And I asked him if he could follow the instructions, and he understood the difference between the two. And he said he certainly did.
>
> The Court: My recollection, or my notes, he stated yes, that with respect to acting with another he could not consider the death penalty. And I don't think he was rehabilitated on that today. So I'll grant the State's motion to strike Juror No. 948, Virto Doss for cause.

(App. at 397-98.) This passage demonstrates that it was the court's inaccurate recollection of Doss's statements on accomplice liability, and not Doss's religious beliefs, that led the court to exclude him.

In addition, the majority fails to mention that the trial judge also misremembered Doss's statements on the standard of proof. While the court stated that Doss "initially said all doubt" would need to be removed before he could vote for death, this is not the case. Doss said from the beginning and multiple times that he would need to be firmly convinced.

The majority claims that "the trial court's firsthand impressions trump the cold record." I respectfully disagree. While the Court owes deference to the trial court's factual findings, this deference may be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Hall v. Luebbers, 341 F.3d 706, 714 (8th Cir. 2003).

> Even in the context of federal habeas, deference does not mean abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

I would conclude that clear and convincing evidence shows that the trial court's decision was based on an incorrect factual premise. The judge simply misremembered venireperson Doss's answers to the attorney's questions. He then based Doss's exclusion on these incorrect facts. Our deference to factual findings should not extend so far as to let rulings stand that were based on facts about which the state court judge was simply mistaken. I would reverse and remand on this issue.

_____