# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3432

_____

Albert Bell,                                        *
                                                    *
              Petitioner-Appellant,                 *
                                                    *    Appeal from the United States
       v.                                           *    District Court for the Eastern
                                                    *    District of Arkansas.
Larry Norris, Director, Arkansas                    *
Department of Correction,                           *
                                                    *
              Respondent-Appellee.                  *

_____

Submitted: April 14, 2009
Filed: November 13, 2009

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

In this habeas case involving two consecutive sentences of life imprisonment for a minor, the question we face is whether the Arkansas Supreme Court identified and reasonably applied the correct legal standard for assessing whether the minor made a knowing and intelligent waiver of his <u>Miranda</u> rights. The district court[1] determined that the Arkansas Supreme Court correctly identified a "totality-of-the-

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, adopting the report and recommendation of the Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

circumstances test" as the governing legal standard and applied the test in a reasonable manner. We affirm the judgment of the district court.

## I.

Bell, an Arkansas inmate, was convicted on two counts of felony murder and is serving two consecutive life sentences. He was sixteen at the time of his offense. The murders took place in December 1992 when Bell and an accomplice, Terry Sims, were robbing a grocery store. During the robbery, Bell served as a decoy to distract a store employee whom Sims subsequently shot and killed. A second employee began screaming. Bell then took money from a cash register, and Sims shot and killed the second employee. There is no suggestion that Bell was armed during the robbery or that Bell anticipated Sims would kill anyone. After the robbery and murders, Bell and Sims left the store, discarded the murder weapon, and drove to a friend's home.

Police spoke to Bell twice after the robbery, considering him a potential witness during a first interview and considering him a suspect during a second interview. During the first interview, on January 5, 1993, Bell's mother was present at a sheriff's station where officers questioned Bell but did not give him Miranda[2] warnings. Bell denied involvement in the robbery and murders, denied having been with Sims on the night of the murders, and made no inculpatory statements.

Before the second interview, officers questioned Bell's brother, who contradicted Bell's claim that Bell had not been with Sims on the night of the murders. In addition, officers learned that Sims's neighbor was missing a .22 caliber revolver. The officers believed that the murder weapon was a .22 caliber revolver.

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

At the second interview, on January 8, 1993, police isolated Bell in an interrogation room, read him <u>Miranda</u> warnings, obtained verbal confirmations from Bell that he understood each of his <u>Miranda</u> rights and warnings, and had Bell sign a written form waiving his rights. Bell placed his initials after each warning on the waiver form and placed his signature at the bottom of the form. On the evening of January 8, Bell eventually confessed to his involvement in the robbery and drew the officers a map to the location where they found the murder weapon.

Arkansas charged Bell as an adult, and he moved to have the case transferred to juvenile court. The state trial court denied his transfer motion. Following an interlocutory appeal, the Arkansas Supreme Court affirmed the denial of the transfer motion. <u>See</u> <u>Bell v. Arkansas</u>, 877 S.W.2d 579 (Ark. 1994) ("<u>Bell I</u>").

Back at the trial court, Bell moved to suppress his confession and all statements from both dates. He argued that he did not make his waiver knowingly, intelligently, or voluntarily. He did not deny that officers read him his rights or deny that he acknowledged and waived his rights verbally and in writing on January 8. Rather, Bell argued that he understood the words involved in the recitation of his rights but that he did not understand the full meaning of the warnings, the full extent of his rights, or the full impact of his waiver. He also argued that he felt intimidated and coerced by the police and simply followed their orders when signing the waiver.

The trial court received evidence and heard testimony from several witnesses, including Bell, Bell's parents, and some but not all officers involved in the interviews. In his testimony, Bell stated repeatedly that he had asked for counsel and asked to see his parents several times on January 8 but that the officers denied his requests for counsel. Officers testified that Bell made no such requests. Bell objected that the state failed to make all of the interrogating officers available to testify. The trial court overruled Bell's objection, finding that the missing testimony likely would have been cumulative.

The trial court then denied Bell's suppression motion without comment as to Bell's credibility or that of his parents and without specifically addressing the voluntariness of his waiver or Bell's allegations that he requested and was denied counsel. A jury subsequently convicted Bell on two counts of felony murder. Bell received two consecutive life sentences.

On appeal following his conviction, the Arkansas Supreme Court held that, as a matter of state law, the trial court erred by failing to require Arkansas to produce all officers having material connections with the disputed interrogations and confession. Bell v. Arkansas, 920 S.W.2d 821 (Ark. 1996) ("Bell II"). The Arkansas Supreme Court reversed and remanded with instructions to reopen the suppression-hearing record. The instructions directed the trial court to vacate the convictions and hold a new trial only if, upon receiving further evidence on the suppression issue, the trial court were to conclude that the statements required suppression.

On remand, the trial court reopened the record and heard additional testimony. In addition, Bell filed an amended suppression motion renewing his previous arguments. He also argued that the interrogation continued after he requested counsel and that officers denied him access to his parents and to counsel. Finally, he argued that officers failed to comply with a state criminal rule, Arkansas Criminal Procedure Rule 2.3, which requires officers to tell persons who are not under arrest that they are free to leave and need not accompany officers for questioning. In fact, in briefing at a later stage of state proceedings, Bell described the focus of his arguments as follows:

> At the first suppression hearing, trial counsel attempted to suppress the custodial statements based upon coercion. On appeal to this Court, it was noted that Appellant was asserting that he was forced to make a statement and was intimidated by an officer when he requested an attorney. At the second suppression hearing, trial counsel changed his argument and alleged that the State violated the provisions of [Arkansas Criminal Procedure] Rule 2.3 . . . when [Bell] was taken to the Sheriff's

-4-

> Office on January 5, 1993 and January 8, 1993 for questioning without
> a verbal warning of his right to refuse.

Appellant's Brief to the Arkansas Supreme Court on appeal from the denial of state post-conviction relief at 52.

After the second suppression hearing, the trial court suppressed Bell's statements as having been obtained in violation of Arkansas Rule 2.3. The trial court also found that officers did not sufficiently inquire as to Bell's ability and capacity to make a knowing and intelligent waiver of his rights. The trial court noted that officers read Bell the <u>Miranda</u> warnings and obtained the verbal and written waivers, but held that the officers needed to take more actions to investigate and ensure Bell's ability, as a minor, to understand, fully appreciate, and validly waive his rights. Again, the trial court made no findings or comments regarding the voluntariness of Bell's waiver or Bell's claims that he repeatedly requested counsel and that officers denied him access to counsel and continued interrogating him in the face of such requests.

The state appealed, and the Arkansas Supreme Court reversed, rejecting the trial court's state-law ruling as to Rule 2.3 and also rejecting the trial court's position that the officers had a heightened duty to ensure Bell's capacity, as a minor, to knowingly and intelligently waive his rights. <u>Arkansas v. Bell</u>, 948 S.W.2d 557 (Ark. 1997) ("<u>Bell III</u>"). The court cited Arkansas authority as to the issue of a knowing and intelligent waiver and reviewed the facts of Bell's case that it deemed material to this inquiry, stating:

> It was undisputed that Bell had been read his <u>Miranda</u> rights prior
> to giving the statement on this date. Bell also had some familiarity with
> the criminal justice system due to the fact that he had previously been on
> probation as a juvenile offender. In fact, he knew that as a juvenile, he
> was entitled to have his parents or a lawyer present when being
> questioned. He was age 16 and a high school sophomore who was
> taking regular courses in math, science, and English, though he had also

been in remedial classes since the fourth grade. He further agreed that he understood the words in his warnings but denied knowing their import.

. . .

Balanced against these factors is Bell's self-serving statement that he did not realize the consequences of a waiver. He also contends that he requested counsel, which partially flies in the face of his contention that he did not understand his <u>Miranda</u> rights. While it is true that we defer to the trial court's assessment of credibility, here the trial court provides no insight as to why it found that Bell did not understand the consequences of what he was doing. Indeed, the factors clearly preponderate in favor of a knowing and intelligent waiver. The mere statement of the accused that he did not comprehend a waiver's significance is not enough in light of his statement that he understood the words and his acknowledgment to the officers that he understood his rights. We hold that the trial court clearly erred in suppressing the statement of Bell on this basis.

<u>Id.</u> at 562 (internal citations omitted).

The court expressly stated in a footnote that the trial court had not made a ruling regarding Bell's assertion that he requested counsel, stating that the "precise issue is not before us in this appeal." <u>Id.</u> at 562 n.1.

Subsequently, Bell filed for state post-conviction relief in the trial court in accordance with Arkansas Rule of Criminal Procedure 37. Bell raised several grounds for relief, only one of which bears upon the issues currently before our court. Bell argued that trial counsel was constitutionally ineffective in failing to obtain a ruling from the trial court regarding the purported denial of counsel during Bell's interrogation, thus precluding Bell from raising claims involving the denial-of-counsel issue in his final direct appeal. The trial court denied post-conviction relief without addressing the ineffective-assistance claim related to trial counsel's failure to secure a ruling.

-6-

The Arkansas Supreme Court affirmed. Bell v. Arkansas, No. 02-1071, 2004 WL 1068724 (Ark. May 13, 2004) (unreported) ("Bell IV"). In doing so, the Arkansas Supreme Court noted that the state trial court's order denying post-conviction relief did not address the allegations of ineffective assistance as to trial counsel's failure to secure a ruling on Bell's claim that his waiver was involuntary and that officers denied his requests for counsel. The court concluded, "It is appellant's obligation to obtain a ruling from the trial court in order to properly preserve an issue for review. Because the trial court did not rule on this issue, appellant is procedurally barred in raising the issue now." Id. at *7 (internal citation omitted). Because the trial court in post-conviction proceedings had not ruled on this particular ineffective-assistance claim, then, the Arkansas Supreme Court deemed appellate review of the claim to be barred.

Finally, Bell filed a pro se petition for habeas relief in the district court pursuant to 28 U.S.C. § 2254. He raised several claims, including a claim with a caption describing a challenge to the reasonableness of the Arkansas Supreme Court's application of the test for determining whether he made his waiver knowingly and intelligently. Although the caption only referenced the knowing and intelligent requirements for a valid waiver, his arguments and factual recitations associated with the claim clearly referenced the issue of voluntariness. He asserted several facts regarding the interrogations and the officers' statements and actions while taking him to the sheriff's station, including the purported denial of counsel. These facts clearly were material as to the issue of voluntariness and the potentially coercive nature of the setting. It is less clear whether they were material as to the issue of Bell's comprehension of his rights or the impact of his waiver, i.e., whether he made his waiver knowingly and intelligently. Further, Bell made reference to the coercive nature of the officers' actions and alleged that the officers' actions had the effect of overbearing his will.

At all times before the district court, Bell proceeded on a pro se basis, and the district court docket does not indicate that he requested counsel. In the report and recommendation, adopted in full by the district court, the court liberally construed Bell's filings and stated, "Petitioner contends that his waiver of his <u>Miranda</u> rights was neither 'voluntary' nor 'knowing and intelligent.'" The court stated that these concepts present two distinct and separate inquiries, and the court addressed them separately. The state did not object to the court's characterization of Bell's claim as encompassing the question of voluntariness.

Regarding the question of whether Bell made his waiver knowingly and intelligently, the court identified the governing legal standard as a totality-of-the-circumstances test, see <u>Fare v. Michael C.</u> 442 U.S. 707, 725–26 (1979), and noted that the Supreme Court had expressly held that this test applies to juvenile and adult offenders alike. <u>Id.</u> at 726. The court then identified the factors the state court had relied upon, noted that the Arkansas cases the state court had cited were consistent with <u>Fare</u>, and found that the state court did not apply the test in an unreasonable manner.

Regarding the question of voluntariness, the court stated, "[The state] does not argue that the voluntariness or counsel-request issues are procedurally defaulted and, because of the unusual procedural history, this Court will address the merits of both dimensions of the waiver inquiry and, to a limited extent, his allegations that he requested counsel." The court proceeded to address relevant facts surrounding the interrogations including the length of the detention and questioning, allegations regarding raised voices and forceful gestures, and Bell's claims that he felt coerced and intimidated. The court expressly discussed and dismissed several aspects of Bell's suppression-hearing testimony and that of his parents, noting that much of their testimony did not relate to the period of time preceding and surrounding Bell's waiver of his rights. Rather, the testimony described things that Bell's parents purportedly heard and that Bell purportedly experienced later in the interrogation.

-8-

The court then addressed Bell's allegations that he requested counsel both before arriving at the sheriff's station on January 8 and then repeatedly at the sheriff's station on that date before and after signing the waiver. The court noted that the testimony on this point was conflicting, as the officers testified Bell had not made any such requests. The court noted the absence of any express discussion of this issue in the state court opinions. The court did not believe, however, that the absence of express discussion indicated that the state courts had failed to consider this issue. The court stated:

> Nevertheless, this Court believes that the circuit court's denial of Petitioner's motion to suppress following the first [suppression] hearing constitutes a rejection of his repeated testimony that he requested an attorney. As such, the ruling is an implicit finding that Petitioner never invoked his right to counsel on January 8. By denying Petitioner's motion to suppress, the circuit court necessarily decided to credit the officers' testimony that Petitioner made no request for counsel, and to discredit Petitioner's testimony to the contrary. He has not presented clear and convincing evidence to rebut this implied factual determination, and it is reasonable in light of all testimony presented.

The district court denied a certificate of appealability, and Bell filed a pro se appeal and motion for a certificate of appealability with our court. We granted his motion "with respect to Claim 2, whether the state court erred in concluding he knowingly and intelligently waived his rights before making statements to police officers."

II. Discussion

"We review the district court's conclusions of law de novo and its factual findings for clear error." Hunt v. Houston, 563 F.3d 695, 702 (8th Cir. 2009). We may grant a habeas corpus petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), only where "the relevant state court decision was

either 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' . . . or 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Id. (quoting 28 U.S.C. § 2254(d)(1), (2)).

The parties agree that the issue of whether Bell made his waiver knowingly and intelligently is squarely before our court and that our review is subject to the strict limits of AEDPA. Under AEDPA's standards, we must deem factual findings by the state court to be presumptively correct and subject to disturbance only if proven incorrect by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

The state courts, citing Arkansas law, "identified and applied the clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Mitchell v. Esparza, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (internal quotation omitted). The U.S. Supreme Court has concisely articulated the requirements for a valid Miranda waiver in describing the totality-of-the-circumstances test:

> Miranda holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S. at 444, 475. The inquiry has two distinct dimensions. Edwards v. Arizona, 451 U.S. 477, 482 (1981); Brewer v. Williams, 430 U.S. 387, 404 (1977). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the

-10-

circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived.

<u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (quoting <u>Fare</u>, 442 U.S. at 725).

In <u>Fare</u>, a case involving a 16-year-old offender, the Supreme Court held that courts are to assess the validity of waivers of <u>Miranda</u> rights under a totality-of-the-circumstances test for juvenile and adult offenders alike. 442 U.S. at 725 ("This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so."). A defendant's juvenile status, indications of the juvenile's mental abilities, and the impact that the juvenile status likely had on the defendant's ability to comprehend his rights, then, are valid and important considerations under the broad, totality-of-the-circumstances test. <u>Id.</u> ("The totality approach permits—indeed, it mandates —inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."); <u>see also</u> <u>Rone v. Wyrick</u>, 764 F.2d 532, 535 (8th Cir. 1985) (identifying as important factors a juvenile's intelligence, maturity, and prior dealings with law enforcement).

The question of whether a defendant understood the <u>Miranda</u> warnings is a question of fact, but the ultimate question of whether a waiver was valid is a question of law. <u>See</u> <u>Thai v. Mapes</u>, 412 F.3d 970, 976 (8th Cir. 2005) (holding the determination that a defendant understood the <u>Miranda</u> warning "as it was explained to him" was a factual determination that "depend[ed] heavily on the trial court's appraisal of witness credibility and demeanor"). This characterization is consistent

with the Supreme Court's emphasis on the fact-specific nature of the inquiry. See Fare, 442 U.S. at 724–27.

Here, we find nothing in the state's application of the test to be unreasonable, 28 U.S.C. § 2254(d)(1), and Bell has presented insufficient evidence to overcome the presumption of correctness that we must attach to the state court's factual determination that he understood the Miranda warnings. Thai, 412 F.3d at 976; 28 U.S.C. § 2254(e)(1). The state court noted that Bell was a reasonably intelligent 16-year-old high-school student who was in remedial or resource classes for some subjects but who was in "regular" classes for math, science, and English. Bell had prior exposure to the juvenile justice system, expressly acknowledged that he understood the words of the Miranda warnings, and waived his rights verbally and in writing. These facts are similar to the facts present in Fare, where the Court rejected a habeas petitioner's attempt to prove a waiver invalid. See Fare, 442 U.S. at 726–27.

The limited evidence that runs counter to the state court's determination as to this issue includes Bell's after-the-fact claim that he failed to understand the full meaning of his rights and the full impact of his waiver. In light of the heavy burden Bell faces under § 2254(d) and (e), however, we cannot disturb the state court's ruling in this case. See, e.g., Montejo v. Louisiana, 129 S. Ct. 2079, 2085 (2009) ("When a defendant is read his Miranda rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick.").

Finally, although our certificate of appealability recited only the requirement that a waiver be knowing and intelligent, we are compelled in this case to mention the related issue of voluntariness. At the district court and in his pro se filings with our court, Bell presented arguments surrounding his purported requests for counsel and the overall coercive environment of the interrogation process. He presented these arguments within his claim number 2, the claim for which we granted a certificate of

appealability. Also, the district court interpreted Bell's habeas petition broadly and addressed and dismissed Bell's arguments related to voluntariness. The district court resolved this issue and the purported requests for counsel as factual matters implicitly decided by the state trial court.[3]

We and the Supreme Court have recognized the binding nature of implicit factual determinations. See Marshall v. Lonberger, 459 U.S. 422, 433 (1983); LaVallee v. Delle Rose, 410 U.S. 690, 692–95 (1973) (per curiam); Crespo v. Armontrout, 818 F.2d 684, 686 (8th Cir. 1987). In doing so, we and the Court have interpreted state court records and applied a presumption that "the  state trier of fact applied correct standards of federal law to the facts" to determine whether factual findings necessarily were implicit in the state courts' conclusions. Marshall, 459 U.S. at 433 (internal citations omitted); see also  LaVallee, 410 U.S. at 695 (holding that where there was no evidence the state court had applied an incorrect standard and where the petitioner's testimony would have required a grant of relief, it was proper to infer a credibility finding adverse to the petitioner); Crespo, 818 F.2d at 686

---

[3]To the extent that our grant of the certificate of appealability was not sufficient to include the voluntariness of the waiver, we expand the certificate to include this issue.  Bell has made the requisite "substantial showing" of the denial of a constitutional right in that reasonable jurists could disagree as to whether any state court ruling in this matter actually contained an implicit rejection of Bell's repeated claims to have requested counsel. See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); Cox v. Norris, 133 F.3d 565, 569 and n.2 (8th Cir. 1997) (applying AEDPA's standards and stating, "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently or the issues deserve further proceedings."). As explained below, we conclude that no implicit factual finding disposed of Bell's claim, and we therefore reach a different conclusion than the district court on this issue. We also note that, although this issue centers on Bell's purported requests for counsel, he does not raise a separate denial-of-counsel claim. Rather, he raises the purported requests for counsel as important factors bearing on the voluntariness of his waiver.

(recognizing a state appellate court's acknowledgment of a state trial court's implicit finding of fact, and stating, "This holding leaves no doubt that the court rejected [the petitioner's] factual contention that he asserted his right to counsel.").

We are not fully convinced, however, that these precedents find proper application in the present case. The state court ruling supposedly containing an implicit rejection of Bell's factual assertions was the state trial court's initial denial of Bell's suppression motion. The Arkansas Supreme Court reversed and remanded as to that ruling because the state trial court's underlying evidentiary record was infirm. Then, on a different and expanded record, the state trial court subsequently granted relief, albeit on other grounds, suppressing the statement based on Bell's alternate arguments.

The Arkansas Supreme Court, in the final direct appeal, rejected the state trial court's suppression ruling and expressly stated that it was not considering whether Bell requested counsel because "that precise issue" was not before the court in the final direct appeal. See Bell III, 948 S.W.2d at 562 n.1. In reversing the state trial court's suppression ruling, however, the state supreme court did not purport to reinstate the trial court's earlier ruling in which the trial court had denied the suppression motion. In fact, the state supreme court's ruling in Bell II precluded any such reinstatement of the initial suppression ruling because Bell II held the initial evidentiary record to be infirm. Bell II, 920 S.W.2d at 822–23. The subsequent suppression order resulted from a new evidentiary record that had been established on remand. Accordingly, not only was the state trial court's initial order denying the suppression motion no longer an extant ruling in the case, the record on which the trial court based that ruling was expressly held infirm and subsequently supplemented with additional testimony.

Because the state trial court granted relief on remand and suppressed Bell's statements, it is not possible to infer that the state trial court, on the amended record,

found Bell not credible and rejected the voluntariness arguments tied to his claim of having repeatedly requested counsel prior to signing his waiver. An intact ruling and record denying relief would be required to make such an inference. Further, the Arkansas Supreme Court's footnote 1 in Bell III expressly disavows any action on the part of the Arkansas Supreme Court to make a ruling as to the issues surrounding the purported request for counsel. Bell III, 948 S.W.2d at 526 n.1. Accordingly, this is not a case like Lonberger, DeVallee, or Crespo, where the state record presents an intact ruling disfavorable to a petitioner that might support an inference of an adverse credibility determination.

Nevertheless, we believe the Arkansas Supreme Court's treatment of Bell's appeal from the denial of post-conviction relief precludes federal habeas relief as to this specific issue. Bell argued in the Rule 37 proceedings that counsel during the underlying proceedings was ineffective for failing to obtain a ruling as to the request for counsel. The Rule 37 court did not address this issue, and the Arkansas Supreme Court held that Bell had failed to preserve this Rule 37 claim for appellate review because he failed to secure a ruling from the lower court on this particular Rule 37 claim. Bell IV, 2004 WL 1068724 at *7.

"[A] state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004). Further, "federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules except in unusual circumstances not present here." Id. (internal citation omitted). A review of Arkansas law demonstrates a well-established and regularly applied rule that "[i]t is the appellant's obligation to obtain a ruling at trial in order to preserve an issue for appellate review." Beshears v. Arkansas, 8 S.W.3d 32, 34 (Ark. 2000); see also Delancy v. Arkansas, 151 S.W.3d 301, 306 (Ark. 2004); Milberg, Weiss, Bershad, Hynes, & Lerach, LLP v. Arkansas, 28 S.W.3d 842, 847 (Ark. 2000) ("It is well

settled that the failure to obtain a ruling from the trial court is a procedural bar to our consideration of the issue on appeal.").

Although the district court elected to address this issue, noting that the state had not raised the issue of a procedural bar, it is appropriate to recognize a procedural bar in habeas cases whether or not raised by the state. See Day v. McDonough, 547 U.S. 198, 205–10 (2006) (holding that a habeas statute of limitations, like "other threshold barriers [such as] procedural default" is non jurisdictional such that courts may, but need not raise such issues sua sponte); Cagle v. Norris, 474 F.3d 1090, 1098 (8th Cir. 2007) (addressing the issue of a procedural bar although not raised in the state's brief); King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001) (en banc) ("We agree with our sister circuits and hold that we have discretion to consider an issue of procedural default sua sponte."). Here, there was no ambiguity in the Arkansas Supreme Court's final ruling, and it clearly rejected the Rule 37 claim based on a failure to comply with a state procedural requirement. As such we find the request-for-counsel/voluntariness claim to be procedurally barred.

We affirm the judgment of the district court.

_____