Damien ECHOLS *v.* STATE of Arkansas

CR 94-928, CR 99-1060 202 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered January 20, 2005
[Rehearing denied February 24, 2005.]

*Dennis P. Riordan, Donald M. Morgan,* and *Theresa A. Gibosno;* and *Cauley, Bowman, Carney & Williams,* by: *Deborah R. Sallings,* for appellant.

*Mike Beebe,* Att'y Gen., by: *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. This case was first decided on March 19, 1994, when a jury found petitioner Damien Echols guilty of brutally murdering three eight-year-old boys in West Memphis on May 5, 1993. Echols appealed these capital murder convictions, and this court, on December 23, 1996, in a 77-page opinion in appellate case number CR94-928, affirmed that conviction. *See Echols v. State,* 326 Ark. 917, 936 S.W.2d 509 (1996) *(Echols I).* This court issued its mandate to the circuit court. Echols petitioned the United States Supreme Court for a writ of certiorari, which that Court denied on May 27, 1997. *See Echols v. Arkansas,* 520 U.S. 1244. This court then reissued its mandate in appellate case number CR94-928 — the direct appeal in *Echols I.*[1]

Echols then pursued his timely petition for postconviction relief in the trial court pursuant to Ark. R. Crim. P. 37.5. *See Echols v. State,* 344 Ark. 513, 42 S.W.3d 467 (2001) *(Echols II).* On June 17, 1999, the trial court denied Echols's Rule 37 claims, and this court, in *Echols II,* appellate number CR99-1060, affirmed the trial judge's refusal to recuse from the Rule 37 proceeding, but our court remanded this case to the trial court for entry of a written order with findings of facts in compliance with Rule 37.5(i). *See*

---

[1] Echols initially became eligible to file a petition on January 13, 1997, the date this court entered its mandate following his direct appeal. This court granted his motion to stay the mandate so he could petition the Supreme Court.

*Echols II,* 344 Ark. at 519. On remand, and after the trial court's review, the circuit court issued a new order with factual findings, rejecting Echols's Rule 37 claims. This time, on October 30, 2003, our court affirmed the circuit court on all Rule 37 claims in case number CR99-1060. *See Echols v. State,* 354 Ark. 530, 127 S.W.3d 486 (2003) (*Echols III*). Our court's mandate in this Rule 37 postconviction case, No. CR99-1060, issued on December 12, 2003.

During the period this court was considering Echols's Rule 37 proceeding, Echols had also filed a petition for writ of error *coram nobis* on February 27, 2001, asking this court to reinvest jurisdiction in the trial court. Our court ruled it would consider Echols's writ of error *coram nobis* petition as a separate case under appellate case number CR94-928 (the docket number for *Echols I,* decided on December 23, 1996). However, this court directed that both cases, CR94-928 and CR99-1060, be submitted and orally argued on the same date. Following separate oral arguments in both cases on October 2, 2003, our court first issued its opinion on October 16, 2003, denying Echols's error *coram nobis* petition. As previously set out above, this court affirmed and entered its decision on October 30, 2003, denying Echols relief under Rule 37. In sum, this court's mandates in CR94-928 and CR99-1060 were final on November 13, 2003, and December 11, 2003, respectively. Consequently, Echols's requests for postconviction relief under Rule 37 and for writ of error *coram nobis* are final unless Echols can successfully establish grounds for this court to recall its mandates in either case number CR94-928 or CR99-1060.[2]

On October 29, 2004, Echols filed the instant motion to recall the mandate and his second motion to reinvest jurisdiction in the trial court to consider a petition for writ of error *coram nobis.* In his motion and the accompanying brief in support, Echols advances two primary arguments in support of his request to recall the mandate and his error *coram nobis* petition: 1) he alleges that the

---

[2] Since these mandates have issued, three attorneys who practice law in San Francisco, California have filed motions in this court seeking permission to practice by comity pursuant to Rule XIV of the Rules Governing Admission to the Bar. The attorneys have associated Deborah R. Sallings of Cauley, Bowman, Carney & Williams as local counsel.

For the purpose of considering Echols's new motions, this court grants comity. We note that these attorneys have submitted an order purportedly signed by Circuit Judge David Burnett, but the order has no file marks. In addition, we note that Echols has had as many as six attorneys in these prior proceedings and appeals, but none of the prior attorneys appear to be active or of record in the pending motions.

jury received and considered extraneous information — specifically, the confession of Jessie Misskelley — during deliberations at his trial, thus undermining the fundamental fairness of the trial process; and 2) certain members of the jury harbored an impermissible bias against him, in violation of his Fifth, Sixth, and Fourteenth Amendment rights.

Echols first argues that this court wields the inherent power to recall its mandates and cites Ark. Sup. Ct. R. 5-3(d) and *Robbins v. State*, 353 Ark. 556, 114 S.W.3d 217 (2003), to support his argument. However, this court made abundantly clear in *Robbins* that we were recalling the mandate "solely because of the unique circumstances of this case." *Robbins*, 353 Ark. at 564. Specifically, the question raised by the request to recall the mandate was whether an error in Robbins's appeal had been allegedly overlooked that would have been reversible error had it been found earlier. *Id.* The court pointed to three specific factors that prompted the decision to recall the mandate: 1) a decision had been cited to the court which was on all fours legally with the issue presented; 2) the federal district court had dismissed Robbins's federal *habeas corpus* petition because that issue had not been addressed in state court; and 3) the appeal was a death case "where heightened scrutiny is required." *Id.* These factors combined to make Robbins's case *sui generis*; the court noted that it "consider[ed] this case to be one of a kind, *not to be repeated.*" *Id.* at 564-65 (emphasis added). Thus, in order to recall a mandate, the above three factors must be established.

Although his first contention is that this court should recall its mandate under *Robbins*, Echols makes no showing that he has satisfied any of these three factors, other than the fact that his case, like Robbins's, involves the death penalty. In *Engram v. State*, 360 Ark. 140, 200 S.W.3d 367 (2004), this court refused to recall the mandate in a death penalty case. There, the federal district court had directed Engram to dismiss his *habeas corpus* petition without prejudice so our court could consider any claim of mental retardation he might have under *Atkins v. Virginia*, 536 U.S. 304 (2002); our court held that Engram had exhausted his state remedies, and he was left to pursue his relief, if any, in the federal courts.

Here, as noted above, Echols can satisfy only one of the three *Robbins* criteria — his is a death penalty case. In *Robbins*, this court stressed that the death penalty "is a unique punishment that demands unique attention to procedural safeguards," *Robbins*, 353 Ark. at 561. Here, however, Echols does not even attempt to

establish that the facts of his case comport with the three "unique circumstances" that convinced a majority of this court to recall the mandate in *Robbins*. The *Engram* court noted that "[t]he purpose of recalling the mandate and reopening the case in *Robbins* was in order to correct an error in the appellate process," not an alleged error in the trial court, as was the case in *Engram*. Echols, however, does not raise the possibility of an error in the appellate process; instead, he merely claims that "the developments described [in his motion] warrant an order recalling the court's previously issued mandate and reopening the case for further proceedings in the circuit court." This claim is plainly insufficient to satisfy the requirements of *Robbins* and to justify the recalling of the mandate.

In addition to his request to recall the mandate, Echols also asks this court to reinvest the trial court with jurisdiction to consider his petition for writ of error *coram nobis*. As noted above, this is his second such petition. The essence of his argument is that he was denied a fair trial, because his jury considered extraneous, improper, and unadmitted evidence against him in arriving at its conviction and death sentence; this alleged error, he claims, caused his jurors to harbor an impermissible bias against him. He further argues that those errors are "fundamental in nature and are founded on facts which would have prevented rendition of the judgment if known to the trial court, and which, through no negligence or fault of the defendant, were not brought forward before rendition of the judgment."

We begin with a discussion of the fundamental principles of error *coram nobis*. The writ of error *coram nobis* is an extraordinary writ, known more for its denial than its approval. *Cloird v. State*, 349 Ark. 33, 76 S.W.3d 813 (2002); *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). The function of the writ of error *coram nobis* is to secure relief from a judgment rendered while there existed some fact which would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. *Troglin v. State*, 257 Ark. 644, 519 S.W.2d 740 (1975). The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Cloird*, 349 Ark. at 37; *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999).

We have held that a writ of error *coram nobis* was available to address certain errors of the most fundamental nature that are found in one of four categories: 1) insanity at the time of trial, 2)

a coerced guilty plea, 3) material evidence withheld by the prosecutor, or 4) a third-party confession to the crime during the time between conviction and appeal. *Cloird, supra; Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984). *Coram nobis* proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.*

Although there is no specific time limit for seeking a writ of error *coram nobis*, due diligence is required in making an application for relief. *Echols*, 354 Ark. at 419; *Larimore v. State*, 327 Ark. 271, 938 S.W.2d 818 (1997). In the absence of a valid excuse for delay, the petition will be denied. *Echols, supra*. This court has held that due diligence requires that 1) the defendant be unaware of the fact at the time of trial; 2) he could not have, in the exercise of due diligence, presented the fact at trial; or 3) upon discovering the fact, did not delay bringing the petition. *Id.* at 419 (denying error *coram nobis* relief, which Echols claimed was proper because he had only recently discovered evidence to show he was incompetent at his trial; this court held it was obvious that he was aware of his mental history at the time of his trial); *see also Larimore, supra* (citing John H. Haley, Comment, *Coram Nobis and the Convicted Innocent*, 9 Ark. L. Rev. 118 (1954-55)); *Penn v. State, supra.*

■ At the outset, it should be noted that the basis for Echols's claim — i.e., that the jury considered improper and extraneous information in its consideration of his guilt — does not fall within any of the four categories of errors for which error *coram nobis* constitutes appropriate relief. Although Echols maintains that his claims regarding jury-deliberation irregularities and impermissible jury bias should fall within the ambit of error *coram nobis*, this court has specifically declined to extend the writ to remedy a case involving allegedly misleading responses by a juror during voir dire. *See Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996).

■ It has been more than ten years since Echols's conviction. This fact clearly demonstrates that Echols did not exercise due diligence in bringing his claims to light — especially in view of the fact that the point on which he relies (the jury's alleged consideration of Misskelley's confession) was known to the court, the prosecutor, and to Echols's defense team at the time of trial. In his memorandum brief, he points out that, during trial, the trial court denied his motion for mistrial when one of the police witnesses inadvertently mentioned Misskelley's statement. At that time, the court stated, "I suggest . . . that there isn't a soul up on

that jury or in this courtroom that doesn't know Mr. Misskelley gave a statement." Thus, Echols should have been aware from the time of his trial and conviction of the possibility that the jury might have been aware of and considered this extraneous information.[3]

 For these two reasons — *coram nobis* is not applicable to address and correct the errors that allegedly occurred here, and Echols failed to exercise due diligence in raising these claims — we decline to reinvest the trial court with jurisdiction to consider Echols's petition for writ of error *coram nobis*.[4]

---

[3] Indeed, Echols raised the issue of the jury's improper consideration of the fact of Jessie Misskelley's statement *during* trial; as noted above, he moved for mistrial, which was denied, and he assigned error to this ruling on appeal. In addition, Echols raised a somewhat similar argument in his Rule 37 appeal, wherein he claimed that his trial counsel was ineffective during voir dire for failing to adequately question jurors regarding pretrial publicity and their knowledge of Misskelley's confession. Thus, essentially the same arguments he now attempts to raise in a petition for writ of error *coram nobis* were known to him prior to this point in time. Thus, Echols has failed to comply with the due diligence facet of error *coram nobis*, as he could have presented these facts at trial.

[4] However, even if we were to permit the trial court to reconsider this case, Echols's claim of juror misconduct is extremely untimely. It is true that this court held in *Larimore v. State*, 309 Ark. 414, 833 S.W.2d 358 (1992), that a new trial was warranted where inadmissible materials made their way into the jury room and "could well have influenced the jury to decide ... that appellant was guilty." *Larimore*, 309 Ark. at 360-61. However, Larimore filed a motion for new trial almost immediately after the verdict was rendered. *Id.*; *cf. Cigainero v. State*, 310 Ark. 504, 838 S.W.2d 361 (1992) (a motion for new trial that alleged jury misconduct, but which was filed more than thirty days from the date of the judgment, was untimely). *See also* Ark. Code Ann. § 16-89-130(c)(7) (new trial may be granted upon a showing of jury misconduct that causes the court to conclude that the defendant has not received a fair trial); Ark. R. Crim. P. 33.3(b) (motion for new trial must be filed within thirty days of the judgment). Echols's claim of juror misconduct has been brought over a decade after his conviction. Clearly, this is a matter which could have been brought in a motion for new trial immediately after the verdict and conviction, but the argument is now untimely.

In addition, jurors are presumed to be unbiased and are presumed to follow the instructions given to them by the court. *See Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002); *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001); *State v. Robbins*, 342 Ark. 262, 27 S.W.3d 419 (2000); *Logan v. State*, 300 Ark. 35, 776 S.W.2d 341 (1989). Here, when the witness mentioned Misskelley's statement, the trial court admonished the jury to disregard and not consider the last response." This court will not presume bias or presume that a jury is incapable of following the trial court's instructions. *Kelly, supra.*

Finally, Echols's attempt to prove that his jury considered the Misskelley statement is improper. Ark. R. Evid. 606(b) precludes inquiry into a juror's state of mind during deliberations; the rule only permits inquiry into whether any external influence or infor-

Before we conclude this opinion, we must comment on the DNA testing Echols requested pursuant to Ark. Code Ann. § 16-112-201 *et seq.* (Supp. 2003). Although Echols first filed his motion for DNA testing in September of 2002, the motion is still pending in the circuit court, and the proceeding has remained unresolved since that time. We wish to impress upon the trial court, the State, and Echols's attorneys that this matter needs to be resolved. Although we understand that there are significant constraints and pressures upon the State Crime Laboratory, we also stress that this case has been going on since 1996, and there is a need for finality in this matter. Indeed, in our last per curiam opinion granting an extension, we declined to issue an open-ended stay. Instead, we granted a stay for a period of seventy days from the date of the opinion *rendered on June 19, 2003.* We therefore encourage the parties and the court to take action to ensure that the DNA testing is addressed and concluded.

IMBER, J., concurs.

---

mation could have played a part in the jury's verdict. *Davis v. State,* 330 Ark. 501, 956 S.W.2d 163 (1997). The purpose of this rule is to balance the freedom of jury deliberations with the ability to correct an irregularity in those deliberations. *Miles v. State,* 350 Ark. 243, 85 S.W.3d 907 (2002); *Davis, supra.* We have unequivocally stated that any effort by a lawyer to gather information in violation of Rule 606(b) to impeach a jury's verdict is improper. *Miles, supra.* Although Echols argues that he interviewed the jurors in order to determine whether any external influence or information played a role in the jury's deliberations, what he is essentially asking this court to do is to delve into the jury's deliberations in order to determine whether any of them disregarded the trial court's instructions — specifically, the court's instruction to not consider that a witness had mentioned Misskelley's statement.