Cite as 2016 Ark. 348

# SUPREME COURT OF ARKANSAS

No. CR-90-198

| | |
|---|---|
| LONNIE DOLPHUS STRAWHACKER<br>PETITIONER | **Opinion Delivered:** October 20, 2016 |
| V. | |
| STATE OF ARKANSAS<br>RESPONDENT | PETITION TO REINVEST THE CIRCUIT COURT WITH JURISDICTION IN ORDER TO CONSIDER PETITION FOR WRIT OF ERROR CORAM NOBIS |
| | PETITION GRANTED. |

**RHONDA K. WOOD, Associate Justice**

Lonnie Strawhacker was convicted of rape in 1990. At his trial, FBI hair-comparison expert Michael Malone testified that hairs recovered from the crime scene were indistinguishable from Strawhacker's hairs. In 1996, after allegations were raised concerning the accuracy of FBI hair examiners' expert testimony, the Department of Justice established a Task Force to review all of their hair-comparison testimony. The Department sent letters to the relevant parties that it had concluded that thirteen examiners' work failed to meet professional standards. In 2014, the Department notified Strawhacker that Malone was one of the thirteen who gave invalid testimony. Strawhacker filed a pro se petition with this court for leave to proceed in the circuit court with a petition for writ of error corum nobis. Strawhacker also requested appointment of counsel, which we granted. *Strawhacker v. State*, 2015 Ark. 263 (per curiam). We now grant Strawhacker's petition to reinvest jurisdiction with the circuit court to consider whether to grant coram-nobis relief.


I. *Facts and Procedural History*

In August 1989, a female victim reported that she had been raped and beaten in a ditch outside a nightclub in Fayetteville. Then, according to the victim, her assailant took her to her home in a trailer park, placed her in her bed, and joined her there. The assailant stayed the night, but when the victim woke up the next morning, he was gone. The victim called the police, but was unable to give a visual description of her assailant because she had been so badly beaten her vision was impaired.

The police developed Strawhacker as a suspect and obtained a court order to conduct a voice-identification lineup. The victim identified Strawhacker's voice as that of her assailant. In addition to this voice identification, the State presented witnesses at trial who testified that Strawhacker had been at the nightclub near the time of the assault and, later the next morning, was seen leaving the victim's trailer park wearing muddy jeans and with a bloody shirt his hand.

Additionally, at trial, FBI supervisory special agent Michael Malone was admitted as an expert in the field of hair and fibers. Malone testified that he had worked for the FBI for nineteen years. During that time, Malone received training in hair and fiber analysis; worked on over 3500 cases; examined hair from over 10,000 people; lectured and trained others in the field of hair comparison; published articles; and testified as an expert over 350 times. In the present case, Malone stated that he examined pubic hairs recovered from Strawhacker's jeans and from the victim's bed sheets. Malone told the jury that the pubic hair found on Strawhacker's jeans was "absolutely indistinguishable" from the victim's public-hair sample. Malone also testified that the pubic hair found on the victim's bed "exhibited exactly the

same characteristics" as Strawhacker's hair sample and was "absolutely indistinguishable" and "consistent with coming from Mr. Strawhacker."

At times, Malone equivocated on the reliability of hair-comparison testimony. For instance, he stated that hair comparison was not as exact as other forms of identification: "Now, I don't want to mislead you. It's not a fingerprint. In other words, nobody can get a hair to the point that they can say 'This hair came from that person and nobody else in the world.'" But Malone also testified that it would be "highly unlikely" that the pubic hair came from anyone other than the victim, and the chances that another person would have the same characteristics was "extremely remote." Malone even stated that the probability of a false identification was one in five thousand. The jury convicted Strawhacker, and he was sentenced to life in prison for rape and 30 years for battery.[1]

In October 2014, the Department of Justice sent Strawhacker a letter informing him that Michael Malone's testimony "may have failed to meet professional standards." The letter also stated that "the prosecutor in your case(s) has advised the Department of Justice that Michael Malone's work was material to your conviction." In an earlier letter sent in September 2014, the Department informed the prosecuting attorney that Malone's "testimony regarding microscopic hair comparison analysis contain[ed] erroneous statements." The Department further stated that Malone had "overstated the conclusions that may appropriately be drawn from a positive association." According to the Department, Malone overstated the evidence in the following three ways, all of which exceeded the

---

[1] We affirmed on direct appeal. *See Strawhacker v. State*, 304 Ark. 726 (1991).

limits of science: (1) testifying that the hair could be associated with a single person to the exclusion of all others; (2) assigning a statistical weight or probability that the hair originated from a particular source; and (3) citing his past experience in the laboratory making positive hair identifications.[2] The Department said it would waive any statute-of-limitations or procedural-default defenses should a claimant file a petition for habeas corpus under 28 U.S.C. § 2255. The State has not made similar concessions. As a result of the Department's disclosure, Strawhacker has filed a petition to reinvest jurisdiction with the circuit court to consider a petition for writ of error coram nobis.

## II.  *Writ of Error Coram Nobis*

The writ of error coram nobis is an extraordinary writ, known more for its denial than its approval. *Echols v. State*, 360 Ark. 332, 201 S.W.3d 890 (2005). The function of the writ of error coram nobis is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. *Id*. The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Sanders v. State*, 374 Ark. 70, 285 S.W.3d 630 (2008) "In simple terms, this writ is a legal procedure to fill a gap in the legal system—to provide relief that was not available at trial because a fact exists which was not known at that time and relief is not available on appeal because it is not in the record." *Penn v. State*, 282 Ark. 571, 573–74, 670 S.W.2d 426, 428 (1984).

---

[2] Malone testified at trial that "over the last fifteen years . . . I've looked at the hairs of over ten thousand people and I've only had two occasions over those fifteen years where I had hair from two different people that I could not tell apart."

We have held that a writ of error coram nobis is available to address certain errors that are found in one of four categories: (1) insanity at the time of trial; (2) a coerced guilty plea; (3) material evidence withheld by the prosecutor [a *Brady* violation]; or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38. We will grant permission for a petitioner to proceed in the trial court with a petition for writ of error coram nobis only when it appears that the proposed attack on the judgment is meritorious. *Id*. In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. *Id*.

Strawhacker first argues that corum nobis is a proper remedy as a *Brady* violation because Malone, as an agent for the State, may have withheld evidence regarding the integrity of hair-comparison analysis. Strawhacker further argues that, even if Malone and the State withheld no evidence, the Department of Justice's subsequent repudiation justifies expanding the corum-nobis remedy. The State responds that Strawhacker's petition plainly does not fall within one of the four established categories. The State further argues that we should not "radically expand" the remedy to cover Strawhacker's petition because the floodgates will open to further petitions of this kind.

We hold that Strawhacker has stated sufficient grounds for us to find that his writ may be meritorious and therefore we grant his petition. The record reflects that at trial, the State spent considerable time establishing Malone's expertise. In fact, the written record contains over eight pages of trial testimony focused on Malone's expertise. Malone's testimony comprises of 31 pages of the written transcript of the trial. Now the Department

of Justice has put in writing that Malone's analysis was flawed and that his conclusions exceeded the limits of science. In addition, the Department alleged that the prosecutor found Malone's testimony "material" to the verdict. Because Malone was an expert, proffered by the government, the subsequent repudiation of his testimony by the government raises serious concerns due to the "aura of special reliability and trustworthiness" of expert testimony. *Cf. Fukunaga v. State*, 2016 Ark. 164, at 4, 489 S.W.3d 644, 646–47(citing *United States v. Rosales*, 19 F.3d 763, 766 (1st Cir. 1994)). This is sufficient for us to determine he met his burden to reinvest jurisdiction in the trial court.

We acknowledge that Strawhacker's claim may not neatly fall within one of the four established categories. But these categories are not set in stone. We have expanded the corum-nobis remedy in the past. *See Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984). We emphasized that expanding the grounds for the writ was necessary to ensure due process and to provide a state remedy where none exists:

> The growth of the writ is attributable, certainly, to a variety of causes. A great force in its development has been that growing concept, due process of law. The federal courts now show little hesitation in overturning state convictions if a state has no remedy or refuses to exercise it where a defendant has been denied due process of law. And where the federal decisions reflect a procedural gap in a state whereby a defendant denied due process of law is remediless without recourse to the federal courts, the courts of that state may utilize coram nobis to fill the void.

*Id.* at 575, 670 S.W.2d at 429 (citing John H. Haley, Comment, *Coram Nobis and the Convicted Innocent*, 9 Ark. L. Rev. 118 (1955)). These concerns are present here. Additionally, the Arkansas Constitution provides that for every wrong there should be a remedy:

> Every person is entitled to a certain remedy in the law for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely,

SLIP OPINION

and without purchase; completely, and without denial; promptly and without delay; comfortably to the law.

Ark. Const. art. 2, § 13.

Therefore, we grant Strawhacker's petition to reinvest jurisdiction with the circuit court. In considering the writ, the circuit court should still consider whether to grant the writ according to one of the four currently established categories. However, if the court finds that Strawhacker's petition does not fall within one of these four categories, the court should consider whether the writ should be granted according to the "rule of reason" in this unique circumstance where: (1) the State presented expert scientific opinion at trial; (2) the expert was an agent of the government; and (3) that same government later repudiates the expert's scientific opinion. As we stated in *Penn*, "the rule of reason is simply that the writ ought to be granted or else a miscarriage of justice will result." 282 Ark. at 571, 670 S.W.2d at 429 (citing *Davis v. State*, 161 N.E. 375 (Ind. 1928)).

Therefore, at the hearing on the writ, if the circuit court concludes that the repudiated expert's testimony was material, Strawhacker is entitled to relief. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Cloird v. State*, 349 Ark. 33, 38, 76 S.W.3d 813, 816 (2002). In other words, had it been known that the hair-comparison testimony was "erroneous," is there a reasonable probability that the result would have been different? If so, then the court should grant the writ to prevent a miscarriage of justice in this unique situation. The materiality of his testimony is a question for the circuit court to decide after the record has been developed at an evidentiary hearing: "[T]he reasonable-probability standard . . . applies to the circuit court's evaluation of the

7

merits of the error coram nobis petition and not to this court's decision to grant or deny permission to proceed with filing the petition in circuit court." *Howard*, 2012 Ark. 177, at 11, 403 S.W.3d at 46.

We conclude by emphasizing that coram nobis remains an extraordinary remedy. This case and its companion, *Pitts v. State*, 2016 Ark. ___, are unique. We steadfastly adhere to the principle of finality. But we will not place finality over justice and due process when the government admits that its agent gave invalid expert scientific testimony at a criminal jury trial.

Petition granted.

DANIELSON and GOODSON, JJ., concur in part and dissent in part.

**PAUL E. DANIELSON, Associate Justice, concurring in part and dissenting in part.** I concur with the majority's decision to grant the petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis. However, in my view some parts of the majority's opinion are advisory, premature, and go too far. I would limit the opinion to granting the relief requested, that is, to reinvest jurisdiction in the trial court to file a petition for writ of error coram nobis *or any alternative relief that the petitioner deems appropriate*.

The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. This court will grant permission for a petitioner to proceed in the trial court with a petition for writ of error coram nobis only when it appears that the proposed attack on the judgment

is meritorious. *Id*. In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. *Id*. Under the unique facts of this case, I agree that Strawhacker's allegations warrant reinvesting the trial court with jurisdiction to decide whether relief should be granted.

The foundation of both Strawhacker's claims and Eugene Pitts's claims in *Pitts v. State*, 2016 Ark. 345[1] is the report of a review conducted by the United States Department of Justice (DOJ) and the FBI that concluded that Malone and other FBI laboratory examiners had overstated the level of scientific certainty with which hair evidence could be linked to a particular suspect in some cases, including Strawhacker's and Pitts's cases. However, the two cases have different issues and factual situations. For example, Strawhacker states in his brief that he anticipates seeking DNA testing of the hair at issue in his case. The whereabouts of the hair at issue in Pitts's case are unknown; therefore, additional DNA testing of the hair is not a possible remedy in that case. Also, Strawhacker received a letter in 2014 from the DOJ that states, "The prosecutor in your case(s) advised the Department of Justice that Michael Malone's work was material to your conviction and an Independent Scientific Review of that work was performed." While Pitts received a similar letter, there is no indication that the prosecutor in Pitts's case contacted the DOJ or performed a review of Malone's work.

Based on the differences in the two cases, Strawhacker and Pitts may request different forms of relief from the trial court. In his brief, Strawhacker acknowledges that if this court

---

[1]*Pitts v. State*, CR–80–40 has been submitted as a companion case because it also involves hair-analysis testimony of Michael Malone.

reinvests the trial court with jurisdiction, he anticipates filing a petition for a writ of habeas corpus and possibly a writ of audita querela. A writ of error coram nobis is appropriate only when no other remedy is available. Therefore, if either Strawhacker or Pitts is successful and receives relief through another remedy, then it may be unnecessary to address the issue of the expansion of error coram nobis at this time.

Furthermore, parts of the majority's decision instruct the trial court on what to do based on its findings. For example, the majority opinion states that

> [i]n considering the writ [of error coram nobis], the circuit court should still consider whether to grant the writ according to one of the four currently established categories. However, if the court finds that Strawhacker's petition does not fall within one of these four categories, the court should consider whether the writ should be granted according to the "rule of reason" in this unique circumstance where (1) the State presented expert scientific opinion at trial; (2) the expert was an agent of the government; and (3) that same government later repudiates the expert's scientific opinion. . . .

> Therefore, at the hearing on the writ, if the circuit court concludes that the repudiated expert's testimony was material, Strawhacker is entitled to relief. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Cloird v. State*, 349 Ark. 33, 38, 76 S.W.3d 813, 816 (2002). In other words, had it been known that the hair-comparison testimony was "erroneous," is there a reasonable probability that the result would have been different? If so, then the court should grant the writ to prevent a miscarriage of justice in this unique situation.

At the very least, the majority's opinion implies that the trial court should expand error coram nobis if certain conditions are met. Directing the trial court to expand error coram nobis without consideration of alternative remedies risks "opening the flood gates," a concern addressed by the State. At oral argument, counsel for Strawhacker acknowledged that expanding the writ of error coram nobis would be "monumental" and that the court needs to have all of the facts before it makes that determination. Counsel for the State

agreed that, while the State does not believe that there was a *Brady* violation, Strawhacker "could bring a claim under the DNA testing statute" and that "there is a remedy in the habeas statute for testing that didn't get done, the testing that defendant believes could be done now."

These cases are unique in that they involve scientific testimony of the government's expert, Malone, which was presented by the prosecution at trial and has now been repudiated by the government. It appears to me that, because of the unique issues in these cases, the majority is attempting to skip a step in the judicial process by authorizing the expansion of error coram nobis before the requisite findings are made. However, at this point, we have no record before us and it is not the function of the appellate courts to make findings; it is the trial court's responsibility to hold an evidentiary hearing and make findings and the attorneys' responsibility to develop a record for appellate review. The expansion of error coram nobis is not before us at this time, and we must not act prematurely. The only issue properly before us at this time is whether to reinvest jurisdiction in the trial court.

Accordingly, I would reinvest jurisdiction in the trial court so that Strawhacker can file a petition for writ of error coram nobis and *any other relief* that he deems appropriate.

For these reasons, I concur in part and dissent in part.

GOODSON, J., joins.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.