# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3471

_____

Kenneth Gray,

*Petitioner - Appellant,*

v.

Jeff Norman,

*Respondent - Appellee.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 26, 2013
Filed: January 10, 2014

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Kenneth Gray was convicted of second-degree murder, first-degree burglary, and armed criminal action in Missouri state court. The Missouri Court of Appeals affirmed his conviction and sentence on direct appeal, *State v. Gray*, 100 S.W.3d 881 (Mo. Ct. App. 2003) (*Gray I*), and later affirmed the denial of Gray's motion for post-conviction relief. *State v. Gray*, No. SD29047 (Mo. Ct. App. Dec. 29, 2008) (*Gray II*). Gray filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254,

raising federal constitutional challenges to his conviction. The district court[1] denied the petition, and we affirm.

## I.

The factual findings of a state court are presumed to be correct in a federal habeas proceeding, 28 U.S.C. § 2254(e)(1), and we recite the facts as recounted by the Missouri courts. Around noon on October 27, 1999, Gray, then sixteen, walked to his neighbor's house. Finding no one home, he used a brick to break a window and entered the house. When the neighbor returned home unexpectedly, Gray hid behind a couch. Upon discovering the broken window, the neighbor called both his landlord and a friend. As the neighbor prepared to call the sheriff's office, Gray emerged from hiding, pointed a handgun at the neighbor, and asked him not to make the call. When the neighbor proceeded to call the sheriff, Gray shot and killed him.

The neighbor's friends discovered his body later that evening and called the police. As part of their investigation, the officers contacted people in the neighborhood, including Gray. Around 10 p.m., officers talked with Gray for approximately thirty minutes in their patrol car, which was parked in front of the house where Gray lived with his mother and stepfather. Gray said that he had been around the neighbor's house between 10 a.m. and noon that day, but that he had neither seen nor talked with the neighbor. Gray ended the interview, telling officers, "I think this interview is over."

At 11:45 that evening, officers returned to Gray's house and asked Gray and his mother to accompany them to the sheriff's office to discuss the homicide. Gray and his mother agreed and were transported to the office in separate vehicles. Upon

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

arriving at the sheriff's office, officers informed Gray that he was not under arrest and that he could leave at any time. Gray was given a "juvenile" version of the warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436 (1966). The precise warning does not appear in the record, but Gray does not dispute that he was advised of the right to have a parent, guardian, or custodian present during questioning. Officers asked whether Gray wanted his mother present; Gray responded that he did not. Gray signed a *Miranda* form, and officers questioned him for approximately fifty minutes, at which point Gray requested his mother. Questioning ceased until Gray's mother arrived, but then resumed for an hour and a half. During this period, Gray refused to submit to a gunshot residue test. Questioning ended at 2:30 a.m. Officers returned Gray and his mother to their home.

At 11 o'clock the next morning, officers arrived at Gray's home with search warrants that authorized seizure of Gray's hair, blood, and fingernail scrapings. Officers took Gray to a hospital for the blood sample. Officers then took Gray to the highway-patrol-zone office for questioning, arriving shortly after 2 p.m. Gray was again given a juvenile *Miranda* warning. Questioning continued for roughly two hours.

Around 5:15 p.m., another officer began to question Gray. Shortly thereafter, Gray confessed to breaking into his neighbor's house armed with a handgun, and to shooting the neighbor. Gray then agreed to have his confession videotaped. Officers again gave Gray the juvenile *Miranda* warning. Gray acknowledged orally that he understood his rights and wanted to give a statement. He also signed a waiver form. He then repeated his confession.

On February 14, 2000, a Missouri juvenile court certified Gray to stand trial as an adult. The trial court denied Gray's motion to remand his case to the juvenile court. Gray then moved to suppress his confession. After discovery and a hearing, the trial court denied Gray's motion to suppress. The State agreed to reduce Gray's

murder charge from first- to second- degree in exchange for Gray's agreement to waive his right to a jury trial and to consent to submitting the case on a stipulated set of facts. After a trial, the court found Gray guilty of second-degree murder, first-degree burglary, and armed criminal action. The court sentenced him to consecutive life terms on the first two counts and a concurrent, fifteen-year term on the third.

On direct appeal, Gray challenged only the admissibility of his confession. The Missouri Court of Appeals, after addressing eight grounds on which Gray challenged his confession's admissibility, affirmed Gray's conviction and sentence. *Gray I*, 100 S.W.3d at 890–91.

Gray then moved for state post-conviction relief under Missouri Supreme Court Rule 29.15. Gray claimed, *inter alia*, that his appellate counsel was ineffective for failing to argue on the direct appeal that the trial court's denial of Gray's motion to remand to the juvenile court was error. After an evidentiary hearing, the motion court denied Gray's ineffective-assistance claim on the ground that Gray showed neither deficient performance nor prejudice. Gray appealed, and the Missouri Court of Appeals affirmed on the ground that Gray failed to show that his appellate counsel's performance "fell outside the wide range of professionally competent assistance." *Gray II*, No. SD29047, at 7 (internal quotation omitted).

Gray then filed a petition for writ of habeas corpus in the federal district court. Two grounds raised in the petition were that the state court's admission of his confession violated his due process rights, and that the ineffective assistance of his direct-appeal counsel violated the Sixth Amendment. The district court ruled that the state court's decision regarding Gray's confession was not based on an unreasonable determination of facts or contrary to, or an unreasonable application of, clearly established federal law. The court further concluded that Gray failed to establish either that appellate counsel's performance fell below an objective standard of

reasonableness or that the allegedly deficient performance was prejudicial. The court denied the petition, but granted Gray a certificate of appealability on these two claims.

## II.

We review petitions for writ of habeas corpus under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Because Gray's claims were "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), he is entitled to relief only if he shows that the adjudication resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d)(2). AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and places on Gray "the burden of rebutting the presumption . . . by clear and convincing evidence." *Id*. § 2254(e)(1).

## A.

A "totality-of-the-circumstances approach" applies "to determine whether there has been a waiver even where interrogation of juveniles is involved." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979). This approach includes "evaluation of the juvenile's age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Id*.; *see also Bell v. Norris*, 586 F.3d 624, 631 (8th Cir. 2009).

Gray acknowledged in state court that the State made "a *prima facie* case of voluntariness by showing that at all stages of interrogation [Gray] was advised of his constitutional rights and . . . no physical force, threats, or coercive tactics were used

to obtain the confession." *Gray I*, 100 S.W.3d at 886 (second alteration in original) (internal quotation omitted). He argues, however, that the state courts unreasonably applied clearly established law by determining that his confession was voluntary. He contends that proper consideration of his youth, the influence of his medication, his inability to speak with his mother during interrogation, and the presence of fear and duress lead inexorably to the conclusion that his confession was the product of an overborne will.

The Missouri court applied *Fare*'s totality-of-the-circumstances test and considered each of the circumstances cited by Gray. The court acknowledged Gray's youth, but properly weighed minority along with other factors, such as Gray's familiarity with the criminal justice system and his "invocation of his rights, refusal to consent to the gunpowder residue test, and his assertion of control over the interview process." *Id*. at 887. The court addressed Gray's claim that his medication impaired his ability to act voluntarily, but found that Gray "presented no evidence from any source, including his own testimony, that [his] medications had side effects or that taking them impaired his ability to make an intelligent, understanding, and voluntary waiver." *Id*. at 888. The court concluded, rather, that "the evidence supports a finding that [Gray's] medicines aided him in making an intelligent, understanding, and voluntary waiver of his constitutional rights, rather than impairing his ability to do so." *Id*. at 889. The Missouri court determined that Gray's claim about his inability to speak with his mother "rings hollow," because Gray successfully requested his mother's presence during the first interrogation and enjoyed ample time to confer with her between the interrogations. *Id*. The court rejected Gray's claim of actual coercion because Gray "explicitly acknowledge[d] that 'no physical forces, threats, or coercive tactics were used to obtain [his] confession,'" *id*. (second alteration in original), and the court found "no basis in th[e] record for concluding that the interrogation length, or the number of officers involved, or the procedure followed, were significant circumstances that support [Gray's] claim of involuntariness." *Id.* at 890.

In this federal proceeding, Gray essentially reargues the same factors that were considered by the state courts. To obtain relief in light of AEDPA, however, he must establish not only that the state court's decision was incorrect, but also that it was unreasonable. The Missouri court applied the correct legal standard and reached a reasonable conclusion under the circumstances. That the weighing of factors was debatable, or that a contrary conclusion might also have been reasonable, is not a sufficient basis to set aside the judgment of the state courts.

B.

Our review of the state court's decision on Gray's ineffective-assistance-of-counsel claim is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal quotation omitted); *see also Link v. Luebbers*, 469 F.3d 1197, 1202 (8th Cir. 2006). To establish a constitutional violation under the rule of *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show both that counsel's performance was deficient and that the deficiency prejudiced his defense. Counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Where a state court concludes that there was no ineffective assistance under this "highly deferential" standard, a federal court then must review counsel's performance under the "deferential lens of § 2254(d)." *Pinholster*, 131 S. Ct. at 1403 (internal quotations omitted).

Gray argues that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in denying his motion to remand his case to the juvenile court. The Missouri Court of Appeals determined that Gray failed to show that his appellate counsel's performance "fell outside the wide range of professionally competent assistance." *Gray II*, No. SD29047, at 7 (internal quotation omitted). Where, as here, "appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations

that counsel was deficient for failing to assert some other claims." *Link*, 469 F.3d at 1205. This is because one of appellate counsel's functions is to winnow the available arguments and exercise judgment about which are most likely to succeed on appeal. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (internal quotation omitted). Gray does not support his challenge to counsel's performance by comparing the claims raised on appeal with the claim that he now says should have been raised, so we have no basis to say that counsel's winnowing process was performed incompetently.

As the state motion court observed, moreover, Gray cannot show prejudice from any deficiency. A Missouri juvenile court's decision to certify a juvenile for trial as an adult is reviewed only for abuse of discretion. *See* Mo. Rev. Stat. § 211.071; *In re A.D.R.*, 603 S.W.2d 575, 580–81 (Mo. 1980) (en banc). It is unlikely that an appeal would have been successful in light of the juvenile court's detailed findings on the factors governing certification.

For these reasons, we agree with the district court that Gray cannot satisfy the elements of a Sixth Amendment claim under *Strickland*. It follows that the state court's rejection of Gray's ineffective-assistance claim was not an unreasonable application of clearly established law.

\*       \*       \*

The judgment of the district court is affirmed.

_____